UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| CHAMBERS OF | U.S. COURTHOUSE |
| --- | --- |
| ZAHID N. QURAISHI | 402 EAST STATE STREET, ROOM 4000 |
| UNITED STATES DISTRICT JUDGE | TRENTON, NJ 08608 |

August 5, 2024

LETTER OPINION

Re:  United States v. Khary Arrington
     Criminal Action No. 14-104-ZNQ

Dear Counsel and Mr. Arrington:

This matter comes before the Court upon a *pro se* Motion for Early Termination of Supervised Release filed by Defendant Khary Arrington ("Defendant"). ("Motion", ECF No. 44.) The Government opposed the Motion ("Opp'n Br.", ECF No. 48) and the U.S. Probation Office ("Probation") filed a response of non-opposition ("Response Letter", ECF No. 47.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b), for the reasons set forth below, the Court will **DENY** the Motion.

I.  BACKGROUND AND PROCEDURAL HISTORY

On March 6, 2014, Defendant pled guilty to conspiring to distribute and possess with intent to distribute 100 grams or more of heroin. (ECF No. 19.) The Court sentenced Defendant to a term of 144 months of imprisonment followed by a five-year period of supervised release. (ECF No. 23.) Defendant moved for compassionate release under the First Step Act (ECF Nos. 27, 31, 37), and on April 30, 2021, the Court denied Defendant's motion. (ECF No. 45.) Defendant then began his period of supervised release on July 1, 2022 upon being released from the Bureau of Prisons. (ECF No. 48.) Defendant filed the instant Motion for Early Termination of Supervised Release on February 20, 2024. (ECF No. 44.) On July 12, 2024, the matter was reassigned to the undersigned. (ECF No. 49.)

II.  LEGAL STANDARD

A court may terminate a term of supervised release prior to its expiration under 18 U.S.C. § 3583(e)(1). The statute provides that a court may terminate a term of supervised release "after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *Id.* To determine whether to terminate supervised release, courts may consider the following factors:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care,

      or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 51 (3d Cir. 2020) (citing 18 U.S.C. § 3553(a)(1), (2)(B)–(D), (4)–(7)). "[A]fter considering these factors, the court may provide relief only if it is satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." *Id.* at 52; 18 U.S.C. § 3583(e)(1). "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a District court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Melvin*, 978 F.3d at 53 (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)). It is not required that a District court make specific findings of fact with respect to each of the factors. *Id.* at 52–53. Instead, "a statement that [the district court] has considered the statutory factors is sufficient." *Id.*

### III.  DISCUSSION

#### A.  WAIVER NOT APPLICABLE

      An appellate waiver in a plea agreement may bar motions for early termination of supervised release in certain cases. *See United States v. Damon*, 933 F.3d 269, 271–72 (3d Cir. 2019). Although neither the Government nor Defendant address the applicability of the appellate waivers contained in Defendant's plea agreement ("Plea Agreement," ECF No. 19) to the instant Motion, Probation did mention waiver in its submission and so the Court will first address it as a threshold matter. (Response Letter at 1.)

      A district court must enforce an appellate waiver "only if [it] conclude[s] (1) that the issues [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *Damon*, 933 F.3d at 272 (internal quotation marks omitted).

      In *Damon*, the defendant broadly waived his right to file "any appeal ... which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33." *Damon*, 933 F.3d at 273. The Third Circuit affirmed the district court's denial of the defendant's motion to terminate his term of supervised release because it found that his motion fell within the scope of the plea agreement's waiver. *Id.* at 270, 273–75.

      District courts in the Third Circuit have distinguished *Damon* on two bases: (1) where a motion for early termination of supervised release is brought by a probation officer or (2) where the language of the appellate waiver is narrower. *United States v. Whitehead*, Crim. No. 10-866, 2023 WL 4686246, at *3 (D.N.J. July 21, 2023) (citing *United States v. Harris*, Crim. No 14-434, 2021 WL 4342091, at *3 (D.N.J. Sept. 23, 2021); *United States v. Fluellen*, Crim. No. 09-497-1, 2022 WL 309159, at *5 (E.D. Pa. 2022)). Here, the Court finds that Defendant's Plea Agreement does not contain an applicable waiver that would preclude him from moving for early termination of his supervised release under *Damon*. Although

the Plea Agreement does contain a "Waiver of Appeal and Post-Sentencing Rights," as well as a few other mentions of waiver, the waivers are more narrow than the waiver in *Damon* and only apply in specific circumstances that the Court finds are not present here, namely: a challenge to Defendant's guilty plea that is "based on any immigration consequences" of the plea, a challenge to Defendant's sentence that claims the court erred in accepting a factual stipulation of the amount of heroin his offense involved, and a challenge to law enforcement's "forfeiture and abandonment of the firearms and ammunition." (Plea Agreement at 3–5, 8.)

Accordingly, the Court finds that Defendant's Motion falls outside the scope of the Plea Agreement's appellate waivers and that his Motion is not precluded by the terms of his Plea Agreement. *See Damon*, 933 F.3d at 273; *Whitehead*, 2023 WL 4686246, at *3.

### B.     MERITS OF DEFENDANT'S MOTION

Given that the Court concludes the appellate waivers in Defendant's Plea Agreement do not preclude his Motion, the Court next considers the merits of the Motion.

Defendant seeks early termination of his supervised release to "enable him to better support his family financially" and "move forward on his path of re-entry." (Mot. at 5–6.) Defendant notes that while on supervised release, he has been fully compliant with all requirements, has had no psychiatric issues, and is a valued worker and member of the community. (*Id.* at 6.) Moreover, Defendant argues that he had no aggravated role in his offense and that his offense did not involve violence or weapons. (*Id.*) Probation does not oppose Defendant's Motion, reasoning that once his supervised release began, Defendant obtained a commercial driver's license and became employed as a driver with a New Jersey-based company, Performance Food Group, until he moved to South Carolina in December 2022. (Response Letter at 2.) Probation notes that Defendant thereafter has maintained gainful employment as a truck driver, has remained in full compliance with the terms of his supervised release, and has not engaged in any further criminal activity. (*Id.*)

The Government, however, opposes Defendant's Motion, emphasizing that Defendant was sentenced as a career offender,[1] with five separate prior convictions for possession with intent to distribute a Controlled Dangerous Substance ("CDS"). (Opp'n Br. at 3–5.) The Government additionally underscores Defendant's personal involvement on multiple occasions in the distribution of significant quantities of drugs, as well as the involvement of firearms in Defendant's offenses, including convictions in 2003 and 2004 for unlawful possession and, most recently, firearms that were found at the time of his arrest in 2013. (*Id.* at 5.) The Government argues that the § 3553(a) factors thus weigh against granting Defendant early termination of his supervised release, and that early termination is neither in the interest of justice nor warranted by new or unforeseen circumstances. (*Id.* at 6.) Lastly, the Government argues that "ceasing supervision simply because [Defendant] has, to date, adjusted well to supervision would not, and should not, in and of itself justify early termination of supervised release." (*Id.* at 7.)

---

[1] The Court rejects the Government's argument that Defendant must first, as a "threshold matter," meet the factors laid out in the Guide to Judiciary Policy (the "Guide"), Vol. 8, Ch. 3, § 360.20(c)—which includes status as a non-career offender—before he can be considered for early termination by this Court. (*See* Opp'n Br. at 3–4.) Rather, that section of the Guide is addressed to Probation and Pretrial Services and poses considerations for those offices to make when deciding whether to recommend early termination of supervised release. Although the Court may consider those factors, they are not binding on the Court. *United States v. Fattah*, Crim. No. 21-3177, 2022 WL 2437846, at *3 (3d Cir. 2022).

Having considered each of the submissions filed in connection with the Motion, the Court will deny Defendant's request for early termination of his supervised release. Defendant's criminal conduct was serious. Defendant possessed with intent to distribute over 100 grams of heroin, against a backdrop of five prior drug offenses concerning CDS, as well as numerous instances of firearms being involved and two prior convictions for unlawful possession of a firearm. That is a significant criminal history which weighs against granting early termination here. *See Melvin*, 978 F.3d at 51; *United States v. Danzey*, 356 F. App'x 569, 570–71 (3d Cir. 2009) (affirming denial of early termination despite defendant's "success thus far" because further supervision was necessary "given his history, the seriousness of the crime, and the sentence he is serving for it"); *United States v. Hightower*, Crim. No. 20-882, 2024 WL 1329256, at *3 (D.N.J. Mar. 28, 2024) ("Multiple convictions for similar offenses weigh against ending supervised release early.").

Additionally, the need for specific deterrence in this case weighs against granting early termination, especially because Defendant's various prior convictions were clearly not adequate deterrents to his criminal conduct. *United States v. Fowler*, Crim. No. 22-150, 2023 WL 6997035, at *3 (D.N.J. Oct. 23, 2023); *United States v. Parrish*, Crim. No. 91-56, 2021 WL 5240146, at *3 (D.N.J. Nov. 10, 2021) (early termination denied despite two years of positive conduct). And finally, early termination is not in the interest of justice simply because Defendant desires to better support his family and make strides in his career, especially considering Defendant's failure to explain how the supervision poses a hardship for him in these areas. *Parrish*, 2021 WL 5240146, at *4 (D.N.J. Nov. 10, 2021) (desire to be with family insufficient to justify early termination where defendant fails to elaborate on how his supervision burdens his family life); *United States v. Jackson*, Crim. No. 11-55, at *4 (W.D. Pa. July 15, 2022) (supervised release not in the interest of justice because defendant "did not articulate any particular hardship that he experiences due to the terms of his supervision").

Though the Court recognizes that Defendant has so far complied with his terms of probation, and encourages Defendant to continue taking affirmative steps to improve his personal circumstances, "a defendant's routine compliance with the terms of supervision, although commendable . . . is precisely what is expected of a defendant" and cannot alone justify early termination of supervised release. *United States v. Hou*, Crim. No. 20-780, 2022 WL 2671130, at *3 (D.N.J. July 11, 2022) (quoting *United States v. Stiso*, Crim. No. 14-484, 2021 WL 1291648, at *3 (D.N.J. Apr. 6, 2021)); *Parish*, 2021 WL 5240146, at *3. In sum, the Court finds that early termination of Defendant's supervised release is neither warranted by Defendant's conduct nor in the interest of justice.

## IV. **CONCLUSION**

For the reasons stated above, the Court will **DENY** Defendant's Motion for Early Termination of Supervised Release. An appropriate Order will follow.

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**